Arnold **GUSTAFSON**, Relator,

v.

A.W. **KUETTEL & SONS**, Respondent,

**Travelers Insurance Company, Respondent.**

No. C9-84-667.

Supreme Court of Minnesota.

Oct. 12, 1984.

H.L. Newby, Jr., Cloquet, for appellant.

James S. Pikala, Minneapolis, for respondent.

TODD, Justice.

In 1970 the Industrial Commission approved a settlement of employee's workers' compensation and third-party claims arising out of an industrial injury which he sustained in 1965. He now seeks review of a decision of the Workers' Compensation Court of Appeals (WCCA) denying his petition, filed in January 1984, to vacate on the ground of mistake the settlement provision concerning his medical treatment and nursing care. We affirm the refusal of the WCCA panel to vacate that portion of the award on the ground of mistake, but have determined that employee should be afforded the relief hereinafter described.

1. The injury giving rise to the employee's compensation claim and his third-party claim occurred on October 8, 1965, when he fell from a scaffold and sustained a serious back injury resulting in paraplegia. The employer-insurer conceded that he was permanently and totally disabled by this tragic accident and by March 11, 1970, had paid $9,810 for disability compensation and $61,-183.04 for medical expenses. On that date the Industrial Commission approved a settlement of both employee's compensation claim and an action he had brought against the scaffold manufacturer. Under the settlement, employee received $93,000. After paying his attorney fees, he had a net recovery of $62,000. The employer-insurer waived their share of the settlement proceeds and any right to subrogation. The proposed settlement filed by the parties also provided that $40,000 of the $93,000 payable to employee would be a credit to the employer-insurer against future medical expense exposure. The commission rejected this provision and instead approved the following one:

That from the sum of $93,000.00, the full settlement to the employee by McKee, the sum of $20,000.00 shall be designated as a credit to Kuettel and Travelers Insurance Company as against future medical care and attention, that said employer and insurer have or may have liability [for] under the Minnesota Workmen's Compensation Act. And that said sum of $20,000.00 shall be specifically allotted from the net sum of $62,-000.00 for the specific purpose of paying for such future medical care and attention and nursing services. In the past, the employee's mother has rendered nursing services to the employee. It is stipulated that the reasonable value of future nursing services of said employee's mother or of other members of the family shall in total be $2,000.00 per year. Whether said nursing services are

actually paid for or not by the employee, a $20,000.00 credit is granted to the employer and insurer, which shall be reduced yearly by $2,000.00, which is deemed to represent nursing services. Any other medical or drug expenses paid by the employer shall similarly be deemed to reduce the total outstanding credit of $20,000.00, granted to the employer and insurer herein. It is further understood that if the nursing services shall not be rendered by the members of the family, who are now rendering same, that the reasonable value of such services shall be paid out of or chargeable against the $20,000.00 allotment and shall exhaust the same accordingly. When a total of $20,000.00 has been expended for medical services or has been credited at the rate of $2,000.00 for nursing services, then and in that event, Travelers Insurance Company shall resume payment for medical services, which shall include nursing services to the employee pursuant to the applicable provisions of the Workmen's Compensation Act of the State of Minnesota.

Prior to the commission's approval, one of its members questioned employee and his mother about their understanding of their rights under the Workers' Compensation Act. Both testified that they understood their rights. The employee requested that the settlement be approved and his mother expressed her agreement with it.

In subsequent years employee's mother furnished him nursing care. In late 1981, employee requested the insurer to pay for additional medical expenses and nursing services, but the insurer refused. The employee then consulted an attorney. Ultimately he filed a petition to vacate the medical and nursing services provision of the settlement on the grounds that the sum of $2,000 a year had been an arbitrary figure arrived at between counsel and that justice required this portion of the settlement be reopened. He also requested that the reasonable value of the nursing services be determined and the insurer be required to reimburse him any amount in excess of $20,000. In supporting affidavits, employee and his mother averred that employee's attorney had not properly advised them and that they had not fully understood their rights at the time the settlement was approved. Employee contended his lack of understanding constituted mistake which justifies setting aside the quoted provision. The WCCA panel concluded, however, that in light of the sworn testimony of both employee and his mother that they fully understood their rights, employee had not made a showing of mistake. After reviewing employee's testimony and that of his mother, we conclude that the WCCA did not err in refusing to vacate the settlement provision.

2. We are at a loss, however, to understand the insurer's apparent position that the settlement absolved it of further responsibility for medical treatment and nursing care. The settlement plainly provided that $2,000 per year was to be charged against the $20,000 credit for nursing services alone. It also provided that any medical expenses employee paid were to be charged against that credit. Thus, it is apparent that the credit was exhausted by the nursing charges alone by 1980, and may have been exhausted some time before then if employee made payments for medical treatment and drugs. Justice requires that employee be given the opportunity to file proof of such payments with the Workers' Compensation Division so that the date on which the credit was exhausted can be definitely determined. At that time, the insurer's statutory obligation to pay the reasonable cost of employee's subsequent medical needs and nursing care resumed under the terms of the settlement itself. Consequently, employee is entitled to reimbursement for the reasonable cost of nursing services and for his payments for necessary medical treatment and supplies from that date onward. Moreover, the insurer remains under a continuing statutory obligation to furnish necessary future medical treatment and supplies and to pay the reasonable value of nursing care. Minn.Stat. § 176.135 (1965).

3. A report in the compensation file from two independent nurse consultants relating to employee's nursing care and medical treatment contains information suggesting a substantial change has occurred in employee's condition. Admittedly, he has been totally disabled since the 1965 accident. Nevertheless, his condition may have worsened so that he requires more intensive medical supervision and treatment and more extensive and skilled nursing services than he needed when the settlement was approved. A substantial change in an employee's condition may furnish "cause" under Minn.Stat. §§ 176.461 and 176.521 (1982) for setting aside an award. *Kresbach v. Lake Lillian Coop. Creamery Ass'n.*, 350 N.W.2d 349 (Minn. 1984). Since the consultants' report indicates that the employee's condition may have substantially worsened, we remand with directions to afford the parties a hearing at which they may submit evidence on that issue. After that hearing, the WCCA shall determine whether employee's condition has indeed changed so substantially as to furnish grounds for vacating the settlement provision relating to medical expense and nursing care.

Whatever the outcome of that proceeding, we reiterate that from the time the $20,000 credit was exhausted, the insurer became liable for furnishing necessary medical treatment and supplies and for paying the reasonable value of nursing services. That liability is a continuing obligation under Minn.Stat. § 176.135 (1965).

Affirmed and remanded for further proceedings.